Edwards v. Reid.

WILLIAM H. EDWARDS ET AL., APPELLEES, V. SARAH
A. REID ET AL., APPELLANTS,

AND

OLOF BERGGREN, APPELLEE, V. SARAH A. REID ET AL.,
APPELLANTS.

FILED MARCH 6, 1894.     NO. 5553.

1. **Homestead**: ABANDONMENT.   Two things must concur to show
an abandonment of a homestead, viz., an intention to abandon
and actual abandonment. *Eckman v. Scott*, 34 Neb., 817, ad-
hered to.

2. ———: ———.   The rule is, that to establish abandonment of a
homestead the evidence must show, not only that the party re-
moved from the homestead, but that he did so with the intention
of not returning, or after such removal he formed the intention
of remaining away.

3. ———: ———: CREDITOR'S BILL: FRAUDULENT CONVEYANCES.
A man and wife removed from their farm, owned by the wife,
to a neighboring town, where they lived for some years in a
rented house and in which the man pursued the business of shoe-
making.   They left a son in charge of the farm and the greater
part of their household goods, and all their stock and farming
implements also remained on the farm.   The wife divided her
time between her place of abode in town and the farm, keeping
general supervision of the latter and doing there the laundry
work and part of the cooking for herself and husband.   The
man died and the widow sold the farm.   In a suit by her cred-
itors to set aside her conveyance as fraudulent, *held* that, as the
evidence did not show that the man and wife left the farm with
the intention of not returning, their removal to and residence
in town did not work an abandonment of the homestead.

4. ———: ———: INTENTION.   Removing from a homestead and re-
siding temporarily elsewhere for the purpose of business, pleas-
ure, or health, will not work an abandonment of a homestead,
unless coupled with such removal is the intention not to return,
or after removal the intention is formed of remaining away.

5. **Fraudulent Conveyances**: NOTICE TO PURCHASER.   To
avoid a sale upon the ground that it is fraudulent as to creditors,
the purchaser must have notice of such facts tending to show

such fraudulent purpose as would put a person of ordinary prudence on inquiry. (*Temple v. Smith*, 13 Neb., 513, adhered to.)

6. ——: CANCELLATION OF CONVEYANCE: VALIDITY OF DECREE WITHOUT FINDINGS. In a suit by a creditor to set aside a conveyance of real estate on the ground that the same was made to defraud him, to the knowledge of the defendant, the court, without either a general or a special finding against such defendant, entered a decree annulling the conveyance, as prayed. *Held*, That it was erroneous to pronounce a decree annulling the defendant's title without either a general or a special finding against him. (Sec. 297, Code Civil Procedure.) *Foster v. Devinney*, 28 Neb., 416, adhered to.

APPEAL from the district court of Saunders county. Heard below before BATES, J.

*N. H. Bell* and *M. B. Reese*, for appellants, contending that the homestead was originally acquired and never abandoned, cited: *Dorrington v. Myers*, 11 Neb., 388; *Dennis v. Omaha Nat. Bank*, 19 Neb., 677; *McFarland v. Washington*, 14 S. W. Rep. [Ky.], 354; *Reilly v. Reilly*, 26 N. E. Rep. [Ill.], 604; *Moore v. Flynn*, 25 N. E. Rep. [Ill.], 844; *Duffey v. Willis*, 12 S. W. Rep. [Mo.], 520; *Rollins v. O'Farrell*, 13 S. W. Rep. [Tex.], 102; Freeman, Executions, sec. 248, and cases cited; *Eckman v. Scott*, 34 Neb., 817; Thompson, Homesteads & Exemptions, sec .285; *Rix v. Capitol Bank of Topeka*, 2 Dill. [U. S.], 370; *Bloedorn v. Jewell*, 34 Neb., 649.

*Simpson & Sornborger, contra*, on the question of homestead, cited: Thompson, Homesteads & Exemptions, secs. 265, 266; *Fyffe v. Beers*, 18 Ia., 7; *Kimball v. Wilson*, 59 Ia., 638; *Cotton v. Hamil*, 58 Ia., 594.

RAGAN, C.

The evidence before us shows that in the year 1881 one Alfred Reid purchased the west half of the southeast quarter of section 25, in township 15 north and range 7 west, in Saunders county, Nebraska, and about the year

1884 moved upon, improved, and began farming and occupying said land as the homestead of himself and family. Some time after this he conveyed the land to his wife, Sarah A. Reid. That he was a shoemaker by occupation, and being unable, on account of poor health, to do the work on the farm, about the year 1886 he rented a building in Wahoo, to which he and his wife removed a part of their household goods, and used this building as their temporary home and Mr. Reid's shoe shop. At the time Mr. and Mrs. Reid came to Wahoo they left their farm in charge of a son, and left also on the farm all their stock and farming utensils, and the greater part of their household goods. Mrs. Reid divided her time between the farm and her abode in Wahoo, a few miles distant. She did the laundry work and some of the cooking for herself and husband on the farm. Thus matters stood until August, 1887, when Mr. Reid died. On November 1, 1887, Mrs. Reid sold and conveyed the farm to her daughter, Mrs. Starks, the consideration being $600, evidenced by two notes of Mrs. Starks of $300 each; the assumption by her of mortgages on the land amounting to $1,200, and the promise to provide her mother with a home, she being then about fifty-two years of age. In February, 1889, Mrs. Reid sold her property on the farm, and the daughter rented the land for that year for cash rent. On January 30, 1890, Mrs. Starks and her husband sold and conveyed the land to one Krailick. On July 27, 1889, one Olof Berggren recovered a judgment against Mrs. Reid and one C. M. Frey, her son by a former husband, for $90.95. A transcript of this judgment was filed and docketed in the office of the clerk of the district court of Saunders county on January 13, 1890. November 1, 1887, Edwards & Castle recovered a judgment in the county court of Saunders county against Mrs. Reid for $80.80, and on February 14, 1888, a transcript of this judgment was filed and docketed in the office of the clerk of the district court of Saunders county.

Executions having been issued and returned unsatisfied, Edwards & Castle and Berggren, in March, 1890, each brought suit in equity against Sarah A. Reid, Abbie A. Starks, and Joseph Krailick; alleging that the conveyance from Mrs. Reid to Mrs. Starks was made and received without consideration and for the fraudulent purpose of hindering and delaying Mrs Reid's creditors in the collection of their debts; and alleging that Krailick's interest in the land was acquired with knowledge of Mrs. Reid's interest in the land and the existence of plaintiff's judgment.

The answer of the parties made defendants and the replies thereto made the following issues: (1.) Whether the conveyance from Mrs. Reid to Mrs. Starks was made and accepted in good faith and for a valuable consideration. (2.) Whether Krailick was an innocent purchaser. (3.) Whether the land at the time it was conveyed to Mrs. Starks by Mrs. Reid was the latter's homestead. The court found and decreed the issues for the complainants, the cases having been consolidated and tried together, and the defendants below bring the case here on appeal.

1. Was the conveyance from Mrs. Reid to Mrs. Starks made and accepted without consideration and with a fraudulent purpose? As to the consideration, the evidence is that Mrs. Starks assumed $1,200 of incumbrances on the land, gave her notes for $600, and promised to provide the grantor a home. The land was worth at the time about $2,600. This was, as between the parties, a good consideration; or, to express it differently, it was not a conveyance wholly without consideration. As to the intent with which this conveyance was made and accepted, for the purposes of this opinion we may disregard Mrs. Reid and her intentions in making the conveyance. If her purpose was fraudulent, and we do not wish to be understood as saying that this record discloses that it was, still, to invalidate the conveyance, Mrs. Reid's fraudulent purpose and intent must have been known to and participated in by

Mrs. Starks. (*Hedman v. Anderson*, 6 Neb., 393; *Smith v. Schmitz*, 10 Neb., 600; *Keith v. Heffelfinger*, 12 Neb., 497; *Burley v. Millard*, 11 Neb., 286; *Crab v. Morrissey*, 31 Neb., 161; *Spring Lake Iron Co. v. Waters*, 50 Mich., 13.) Or, Mrs. Starks must have had notice of such facts, tending to show fraudulent purposes on the part of Mrs. Reid, as would put a person of ordinary prudence on inquiry. (*Temple v. Smith*, 13 Neb., 513; *Bollman v. Lucas*, 22 Neb., 796.) There is no evidence in this record which shows, or tends to show, that Mrs. Starks, at the time she took the deed, knew, or had any reason to suspect, that Mrs. Reid was indebted to any one; nor can such an inference be reasonably drawn from any or all the testimony. The evidence, and all the evidence, on the subject is that Mrs. Starks knew nothing of her mother's indebtedness until after the sale and conveyance of the land to Krailick, nor was any attempt made to show the contrary. Indeed, it would seem from the record, although not expressly so stated, that Berggren's debt was not contracted until 1889. His judgment before the justice of the peace was rendered one year and nine months after, and his transcript thereof filed two years and two months after the date of the conveyance from Mrs. Reid to Mrs. Starks was recorded. We think, therefore, the decree, in so far at least as it finds that Mrs. Starks accepted this conveyance with intent to defraud her mother's creditors, or with knowledge or notice that her mother intended by the conveyance to defraud her creditors, is without any evidence to support it.

2. We come now to the consideration of that part of the decree of the district court in and by which the conveyance from Mrs. Starks to Joseph Krailick was set aside. There is no general finding in favor of appellees or against appellants; nor is there any special finding as to whether Krailick was or was not a *bona fide* purchaser of this land, nor even that he knew of appellees' claims before paying the purchase money to Mrs. Starks, as appellees allege in

their petition.   The court found specially that the convey-
ance from Mrs. Reid to Mrs. Starks was made and accepted
without consideration and with the intent to defraud Mrs.
Reid's creditors; and, without more ado, proceeded to de-
cree that not only that conveyance but the one by. Mrs.
Starks to Krailick be set aside.   The only issue in the
case so far as Krailick was concerned was whether he was
a *bona fide* purchaser of the property, and it was error for
the court to pronounce a decree annulling his title without
either a special or a general finding against him.   (Sec. 297,
Code of Civil Procedure; *Sprick v. Washington County*,
3 Neb., 253; *Smith v. Silvis*, 8 Neb., 164; *Foster v. Devin-
ney*, 28 Neb., 416.)   This decree, then, against Krailick
cannot stand, but in view of the disposition we have de-
cided to make of the entire case, we shall not send it back
for a retrial.   In view of the evidence, or rather the ab-
sence of evidence, in the record, a finding of the court
against Krailick would not avail to support the decree.
There is no pretense that Krailick had any knowledge or
notice of Mrs. Reid's debts or the alleged fraudulent in-
tent or purpose of Mrs. Reid and Mrs. Starks in the mat-
ter of the conveyance of the land at the time he bought
of Mrs. Starks; nor that he did not pay full consideration
for the land.   The only claim made against him is that
before he paid over the purchase money he learned of ap-
pellees' debts and claims in the premises.   It appears from
the evidence that Krailick bought the land prior to 1890,
and took a bond for a deed; that Mrs. Starks' conveyance
to him is dated January 3, 1890; that Krailick borrowed
the money of or through a loan company to pay Mrs.
Starks and left the money in the bank for her, and so ad-
vised her, and that when she called for the money the bank
refused to pay it over unless appellees' claims were paid.
In short, there is no evidence before us from which the
court would have been justified in finding that Krailick was
anything other than a *bona fide* purchaser of this land, with
all that that term implies.

3. The controlling factor in this case, however, is that at
the date Mrs. Reid conveyed this land to Mrs. Starks it
was Mrs. Reid's homestead, and therefore not susceptible of
fraudulent alienation.    The contention of appellees is that
because Mrs. Reid and her husband left the farm and re-
sided in Wahoo, they thereby abandoned the homestead.
All the evidence is that they left it temporarily, and the
evidence does not support the court's conclusion, if it made
such, that they abandoned the homestead; *i. e.*, that they
left it with the intention of not returning.    The rule is,
that to establish abandonment of a homestead the evidence
must show not only that the party removed from the home-
stead, but that he did so with the intention of not return-
ing, or that after such removal he formed the intention of
remaining away.    (*Eckman v. Scott*, 34 Neb., 817; *Gouhen-
ant v. Cockrell*, 20 Tex., 98.)    In *Duffey v. Willis*, 12 S. W.
Rep. [Mo.], 520, defendant left his homestead for several
years, doing business in other places part of the time.    The
homestead property was rented from month to month, and
was at one time vacated by the tenant; and defendant then
intended to return to it, but was prevented by his business.
There was evidence that defendant's residence elsewhere was
temporary, and that he intended to return.    He acquired no
new home elsewhere.    The supreme court of Missouri held
that these facts did not work an abandonment of the home-
stead. (See also *McFarland v. Washington*, 14 S. W. Rep.
[Ky.], 354.)    A case very like the one at bar is found in
*Kenley v. Hudelson*, 99 Ill., 493.    It is said in the opinion
in that case : "It appears from the evidence that complain-
ant resided on the premises about six years until February,
1876, when she rented to a tenant and moved to Louisville, a
town about three miles distant, for the purpose of educating
an invalid child.    At the time she moved she expressed an
intention to return.    When the lease was made she reserved
the right to move back at the end of the year.    She did not
move all her personal property away.    She left farming

implements, a loom, spinning-wheel, bedsteads, etc. From the testimony, it is apparent complainant did not abandon the homestead. * * * Where a person leaves a place which is occupied as a homestead, for a temporary purpose, intending to return, * * * it cannot be held that the homestead has been abandoned." The cases agree in holding that removing from a homestead and residing elsewhere for the purpose of business, health, or pleasure does not work an abandonment of the homestead, unless coupled with such removal is the intention not to return. We reach the conclusion then, and so decide, that the removal of Mrs. Reid and her husband from the farm to Wahoo and their residence there did not work an abandonment of their homestead. The unbending rule of this court is that a finding of fact made by a jury or trial judge will not be disturbed by this court if supported by competent evidence; that this court will not weigh conflicting evidence, nor pass judgment upon the credibility of witnesses; but we place the decision in this case not on the ground that the district court's decree is not supported by sufficient evidence, nor that it is contrary to the evidence, nor that it is contrary to the weight of the evidence, but we predicate our conclusion expressly on the ground that there is no evidence in the record from which the trial court could find that Mrs. Reid and her husband left their home with the intention of not returning. The decree appealed from is reversed and a decree will be entered in this court dismissing the cases of the appellees at their costs.

JUDGMENT ACCORDINGLY.